UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIM MELTON, individually and on behalf of all aggrieved employees,

    Plaintiff,

v.

UNIVERSAL CABLE HOLDINGS, INC., dba SUDDENLINK COMMUNICATIONS,

    Defendant.

No. C 19-07360 WHA

**ORDER DENYING PARTIES' STIPULATION TO REMAND**

### INTRODUCTION

In this wage-and-hour PAGA action, the parties jointly stipulate to remand to Humboldt County Superior Court for lack of subject-matter jurisdiction. For the reasons stated below, the parties' stipulation is **DENIED**.

### STATEMENT

Plaintiff Kim Melton worked for defendant Suddenlink Communications, a cable provider, from November 2016 to September 2018. She worked approximately forty hours per week at Suddenlink's Eureka warehouse. The complaint alleges that plaintiff and other similarly aggrieved employees suffered several wage and hour violations under Suddenlink's employ, including failure to compensate all hours worked, missed meal breaks, improper wage statements, and failure to pay compensation upon discharge (Compl. ¶¶ 22–62).

Plaintiff brought this action in California state court in October 2019, seeking relief for the wage and hour violations plaintiff and all other aggrieved employees allegedly suffered. The complaint also sought civil penalties under California's Private Attorneys General Act, on behalf of the Labor Commissioner and all aggrieved employees. Finally, plaintiff alleges unfair business practices in violation of Section 17200, California's Unfair Competition Law, and seeks restitution, injunctive relief, and attorney's fees (Compl. ¶¶ 63–86).

In November 2019, defendant timely removed this action to federal court based on alleged diversity jurisdiction. Plaintiff did not seek remand. Two joint case management statements revealed that the parties then agreed that "the PAGA allegations establish that the amount in controversy exceeds $75,000" and that plaintiff's attorney's fees were mounting (Dkt. No. 1 ¶ 6; Dkt. No. 16 ¶¶ 1, 11; Dkt. No. 20 ¶¶ 1, 11).

Notably, after the second case management conference in April 2020, the undersigned issued a scheduling order that concluded (Dkt. No. 26):

> This order *specifically* does not bless the idea that the immediate parties to this case could settle any part of any claim (including PAGA) in an agreement purporting to bind any non-party, including the labor commissioner and plaintiff's co-workers. If later the parties wish the Court to bless a settlement, the Court will not prejudice the rights of any non-parties or the commission with respect to PAGA or any other claim without a record demonstrating the compromise of those rights occurs after the parties' due diligence, evaluating the viability of the claims, the maximum recovery, the adequacy of representation, and other factors referred to in Dkt. No. 24, NOTICE AND ORDER RE PUTATIVE CLASS ACTIONS AND FACTORS TO BE EVALUATED FOR ANY PROPOSED CLASS SETTLEMENT AND PROTOCOL FOR INTERVIEWING PUTATIVE CLASS MEMBERS.

Only at this point, after half a year of litigating this action, the parties realized that the amount in controversy did *not* actually exceed the $75,000 jurisdictional minimum. The parties thus requested remand to state court for lack of subject-matter jurisdiction (Dkt. No. 28 at 1). Suspicious of the timing of these events, and concerned that the parties' stipulation attempted to avoid the settlement rule, an order followed requesting evidence substantiating the parties' claim that the amount in controversy did in fact fall below $75,000 (Dkt. No. 29).

In response, the parties submitted (1) a joint brief in support of remand projecting a maximum amount in controversy of $18,105.28; (2) documents from Melton's personnel file used to calculate the new amount in controversy; and (3) sworn declarations of counsel for both sides (Dkt. No. 31).

**ANALYSIS**

The parties seek remand to state court for lack of jurisdiction under 28 U.S.C. § 1447(c). Federal diversity jurisdiction is proper if the parties are diverse and the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. §§ 1332, 1441. Only the amount in controversy is at issue.

The parties correctly observe that federal courts are courts of limited jurisdiction, and that a district court must remand an action if it lacks jurisdiction over the dispute. *See* 28 U.S.C. § 1447(c). On the other hand, litigants are not entitled to remand in an action properly removed. "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

1. **DEFENDANT PROPERLY REMOVED.**

For purposes of determining diversity jurisdiction, "the sum demanded in good faith *in the initial pleading* shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2) (emphasis added). When an action is originally filed in state court and subsequently removed, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court." This order assumes plaintiff's claims for recovery were made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938).

When a complaint fails to state the dollar amount of relief sought, such that it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," our court of appeals applies a "preponderance of the evidence" standard. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see* 28 U.S.C. § 1446(c)(2)(B).

Defendant satisfied its burden upon removal.  In its notice of removal, defendant itemized plaintiff's claims, assigning an estimated potential recovery for each.  Defendant calculated just over $40,000 in compensatory damages and penalties.  With the addition of plaintiff's request for attorney's fees, defendant asserted the total amount in controversy would easily exceed $75,000.

In support, defendant cited several PAGA actions where attorney's fees alone far surpassed the jurisdictional threshold (Ntc. of Removal ¶ 15).  Other judges in this district have accepted similar fees estimates in single-plaintiff actions.  In a 2010 decision, Judge Illston found that "at a rate of $400/hour, attorney's fees would reach $40,000 after just 100 billable hours, and attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case."  *Lippold v. Godiva Chocolatier, Inc.*, No. C 10–00421 SI, 2010 WL 1526441 at *4 (N.D. Cal. Apr. 15, 2010) (Judge Susan Illston).  Defendant's initial calculation was reasonable and indeed shows that the amount in controversy "more likely than not" exceeds $75,000.

Thus, defendant sustained its burden of proof in its removal notice, and federal jurisdiction attached.  Because the amount in controversy is determined at the moment of removal, the Court need not evaluate subsequent developments, and the analysis need go no further.  "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached."  *St. Paul Mercury*, 303 U.S. at 293.  Nonetheless, this order responds to the arguments raised in the parties' stipulation and supplemental filings.

2. **THE STIPULATION AND SUBSEQUENT FILINGS DO NOT OUST JURISDICTION.**

In their stipulation, the parties recalculated the amount in controversy, now agreeing that "[e]ven with attorney fees, the amount in controversy would never exceed $75,000" (Dkt. No. 28 at 2).  The parties' new calculation is unpersuasive for several reasons.

4

### A. The New Calculation Ignores Claims from the Original Complaint Without Explanation.

The stipulation attempts to reduce plaintiff's recoverable amount by abandoning claims alleged in the initial complaint. This is improper.

The complaint alleges six causes of action: (1) failure to compensate all hours worked; (2) missed meal breaks; (3) failure to provide proper wage statements; (4) failure to pay compensation upon discharge; (5) PAGA claims; and (6) unfair business practices (Compl. ¶¶ 22–86). Without explanation, the new amount in controversy calculation includes only (1) missed meal and rest break violations; (2) reduced PAGA penalties; and (3) attorney's fees based on the reduced PAGA penalties, rather than the fees of the entire suit. The parties left out relief for improper wage statements, failure to pay compensation upon discharge, and the UCL claims (Dkt. No. 31 at 2–3).

Although defendant may not amend its notice of removal now, it is worth noting that even its original calculation remains potentially under-inclusive, because it fails to account for any recovery under plaintiff's UCL claims (Compl. ¶¶ 74–86). The UCL cause of action sought, in part, injunctive relief, which would be factored into the amount in controversy as "the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). This order does not attempt to estimate such pecuniary results, but assumes they would be only additive.

Even when, as here, "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury*, 303 U.S. at 292. If the courts allowed such a practice, defendants' right of removal would be "subject to the plaintiff's caprice." *Id.* at 294. The parties may not simply ignore claims raised in the original complaint for the purpose of lowering the amount in controversy to escape federal jurisdiction.

### B. The Supplemental Filing Appears to Understate the Number of Shifts Plaintiff Worked.

The complaint alleges that plaintiff's employ ran from November 2016 to September 2018 and that plaintiff worked five days per week. This represents 95 weeks of employment.

5

Taken together, these allegations suggest plaintiff worked roughly 475 shifts. The parties' supplemental filing, however, settles on just 314 shifts, based on a spreadsheet reflecting entries between December 2016 and December 2017, *nine months before plaintiff's last shift*. Given that the meal and rest break violation awards are a direct function of the total number of shifts worked, this discrepancy cannot be ignored (Compl. ¶¶ 9–10; Dkt. No. 20 ¶ 11; Dkt. No. 31 at 2, Exh. A).

### C. The Parties Attempt to Use a Novel and Unconventional Method for Calculating Attorney's Fees.

The parties do not dispute that attorney's fees are appropriately factored into the amount in controversy when an underlying statute authorizes fee shifting, as PAGA does here. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The parties' new estimate of plaintiff's attorney's fees does give pause, though. The revised calculation estimates fees of roughly $7,500 based on PAGA's fee-shifting provision. The parties state that "[p]laintiff would be entitled to attorney['s] fees under PAGA, however with a recovery of just $1,650, the attorney['s] fees would most likely be between $5,000 to $10,000 to prove the PAGA penalties." Plaintiff bases this new estimate on the general proposition that "the attorney['s] fees must be reasonable" (Dkt. No. 31 at 3).

While $7,500 may indeed be reasonable, that is not the relevant inquiry when calculating the amount in controversy. The amount in controversy is an estimate of the total amount "that will be put at issue in the course of litigation." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d, 395, 400 (9th Cir. 2010) (internal citations omitted). Thus we are concerned not with that amount of attorney's fees a court order might deem reasonable but rather that amount that plaintiff will eventually seek. It is not enough that plaintiff's counsel's estimates that $7,500 might be reasonable. Only a declaration stating that plaintiff will seek no more than a given amount would be relevant to the amount in controversy. No such declaration has been filed. To the contrary, plaintiff asserted that her fees totaled $15,000 in January and $17,500 in April, according to the parties' joint case management statements. Thus, it appears far more than

$7,500 in fees will be "at issue" in the course of this litigation (Dkt. No. 16 ¶ 11; Dkt. No. 20 ¶ 11). *See ibid.*; *Galt*, 142 F.3d at 1156.

Finally, plaintiff's new calculation seems to throw out reliance on the lodestar method (hours times a reasonable rate) that generally guides fee shifting. But the Supreme Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The joint case management statements, too, as discussed, suggest that plaintiff has been calculating fees using the lodestar method (see, *e.g.*, Dkt. No. 20 ¶ 11, noting with regard to the amount in controversy, that "the *current* amount of attorney fees is about $17,500"). Of course, the lodestar's place as the preferred method does not make it the *only* method, but the parties offer no rationale for why it should not be used here, especially in light of the April case management statement.

## CONCLUSION

The parties may not retool their initial pleadings to evade jurisdiction that properly vested. For the reasons stated above, the parties' joint stipulation to remand motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 2, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE